## (January 31, 1949.)

DONALD FLAMM, Respondent, *v.* EDWARD J. NOBLE, Appellant.

*Per Curiam.* The jury could find on the evidence that defendant designed the bringing of such psychological pressure to bear on plaintiff as to induce him, against his will, to sell radio station WMCA to defendant at defendant's price, and that defendant carefully selected the tools whereby the design was successfully executed, all amounting to duress upon plaintiff. On the other hand, the jury might have found that the radio station was on the market, that the price defendant paid was fair and one at which plaintiff was willing to sell, and that

plaintiff, advised by competent counsel, was not subject to duress. The value of the station was speculative and difficult of ascertainment, so that the assessment of damages, if any, imposed upon the jury a very nice and difficult task. In a case so close and delicate, it is of particular importance that the conduct and atmosphere of the trial be fair to both parties, so that the verdict may surely be the result of a judicious weighing of the evidence and not in any way be influenced by passion or prejudice. We have come to the conclusion that the trial of this case was attended by conduct, incidents and insinuations which were out of order and prejudicial and may have improperly influenced the verdict.

Plaintiff's counsel and the court were in running encounter throughout the trial. Counsel was not duly obedient to the court's rulings, frequently attempted to circumvent them and was given to making comments upon the rulings, which nettled and drew from the court many admonitions and even warnings of holding counsel in contempt. These reprimands were usually followed by motions for a mistrial on the ground that plaintiff was not getting a fair trial. All this must have created an atmosphere in the courtroom which was most unfortunate and prejudicial. If we accept, as far as possible, counsel's explanations and grant that the court's handling of counsel was not as considerate as could be desired, the effect on the jury would not be mitigated. While it is not always possible to determine the effect of such conduct and incidents, one cannot read this record without realizing that the jury's attention was too frequently diverted from the issue in the case to personalities and prejudicial irrelevancies which may have affected their verdict.

Counsel for plaintiff called witnesses whose testimony was clearly inadmissible and who should not have been called. While generally the tender of a witness whose testimony is excluded creates no prejudice, the tender of the witnesses Garey and Steingut in this case could only have been calculated to plant insidious impressions.

Mr. Garey was counsel in 1943 for a committee of Congress investigating the Federal Communications Commission and the inquiry at that time extended into the WMCA transfer, which took place more than two years before. Pursuant of a line of questioning as to any approaches made to the witness in 1943 by a representative of defendant, all of which questions had been excluded in several rulings, climaxed with the question, "Were you in 1943 asked by anyone to discontinue your investigation of this WMCA transaction?" Counsel certainly knew from the court's rulings, and would surely know anyway, that any such question was out of order. Putting the question was highly improper and obviously only for the prejudicial purpose of planting the idea in the jury's mind that defendant had attempted to quash a Congressional investigation of the transaction in suit.

The court had clearly indicated during the testimony of plaintiff's witness Weisman that any testimony involving Steingut would be inadmissible; yet Steingut was called and asked to give testimony as to whether he had talked to the President of the United States with respect to the transfer of station WMCA. The irrelevant purpose of the offer, as explained to the court at the bench, was to show irregularities on the part of the commission. Despite the major premise on which plaintiff's cause was based, that defendant's representations of his political influence, although persuasive, were false, and despite the fact that the court repeatedly ruled and instructed the jury that they must assume that the commission acted properly, plaintiff's counsel took pains to insinuate that the commission could be improperly influenced and was improperly influenced in this case. Not only was this done through the proffer of tes-

timony which could not be admissible, but the effort was highlighted by the hardly veiled and entirely unwarranted suggestion in summation that a $50,000 bribe had been paid in this case.

We think there was error in the admission of the testimony of Roberts as to his conversation with Guthrie, which was simply a poisonous recitation of past events as viewed by Roberts, admitted on the theory that defendant had sent Roberts to see Guthrie. That would hardly make Guthrie defendant's agent to receive and make admissible against defendant anything and everything Roberts chose to utter.

We think it was also error for the court to charge that the jury might determine whether the attorneys Dempsey and Koplovitz were under the control of defendant, and that if they found that defendant controlled these attorneys and that their presence was necessary and their absence unexplained, the jury might consider that if called their testimony would not be favorable to defendant. There was no evidence upon which the jury might determine whether or not the attorneys Dempsey and Koplovitz were then under the control of defendant, so the jury was permitted to speculate on the subject without an evidentiary base. So much of the charge was excepted to. As no exception was taken to that part of the charge as to the inference that might be drawn from such a finding, we do not pass upon it (but see *Schwier* v. *New York Central & Hudson Riv. R. R. Co.,* 90 N. Y. 558, 564; *Bleecker* v. *Johnston,* 69 N. Y. 309; *Perlman* v. *Shanck,* 192 App. Div. 179; *Kirkpatrick* v. *Allemannia Fire Ins. Co.,* 102 App. Div. 327; *Group* v. *Szenher,* 260 App. Div. 308; *Raimondo* v. *Fairchester Bakers, Inc.,* 265 App. Div. 861; *Milio* v. *Railway Motor Trucking Co.,* 257 App. Div. 640; *Borman* v. *Phipps Estates,* 260 App. Div. 657; *Galbraith* v. *Busch,* 267 N. Y. 230).

It is nearly impossible to try a case of this length and complexity with freedom from error and mishap. A new trial should not be ordered, therefore, except for error or misconduct both substantial and prejudicial. We probably would not be persuaded to reverse in this case on the basis of the errors mentioned. Combined as they are, however, with persistent improprieties on the part of counsel, we are constrained to hold that the risks of prejudice were so many and so great that we cannot be confident the verdict was fairly secured.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

Peck, P. J., Dore, Callahan, Van Voorhis and Shientag, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event.